UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:13-cr-00240-KJM-1 |
| Plaintiff, | |
| v. | ORDER |
| TROY LEE VICKERS, | |
| Defendant, and | |
| SANDRA GRANT, | |
| Surety | |

In a previous order, this court granted the government's motion to forfeit defendant Troy Lee Vickers' $50,000 unsecured appearance bond. ECF No. 73. The government now seeks an order that Vickers actually pay the entire $50,000, although it requests his surety, Sandra Grant, not be ordered to pay any portion of it. ECF No. 82. The motion is unopposed, as agreed in Vickers' plea agreement. *See* Plea Agreement 5, ECF No. 69. The court heard the government's argument on this question at Vickers' sentencing, *see* Minutes, ECF No. 85, and now denies the motion.

I.  BACKGROUND

In July 2013, a grand jury indicted Vickers on a single count of receiving child pornography. ECF No. 1. He was arraigned about a week later and was released on several

1

conditions. Minutes, ECF No. 7. He and Sandra Grant, his sister and surety, signed a $50,000 unsecured appearance bond. Bond, ECF No. 10. The bond required Vickers' appearance at any hearings and at trial as ordered by this court. *Id.* The court issued an order for his release, noting the bond and imposing conditions. ECF No. 8. Among other things, those conditions required him to appear on time at all proceedings, ECF No. 9, and forbade him from accessing the Internet or using or possessing a computer except as approved by the pretrial services officer, ECF No. 12. As required by these conditions, the government notes Vickers gave up possession of his iPad tablet and BlackBerry smart phone upon his release, and Grant took possession of them. Gov't Br. at 2.

In the week after Vickers was released, he twice attempted suicide. At a subsequent status conference, the government argued for Vickers' detention in light of the risk he may not appear in future proceedings or may endanger the community. Minutes, ECF No. 13. The court permitted him to remain on pretrial release, adding a condition that Grant serve as his third-party custodian. *Id.*; Third Party Custody, ECF No. 15; Am. Special Conditions of Release, ECF No. 18. Grant agreed to "use every effort to assure the appearance of [Vickers] at all scheduled hearings before any court of this District and to notify the Court immediately in the event [he] violates any conditions of release or disappears." Third Party Custody, ECF No. 15. A few days later, the court also added Anthony Bibb, Grant's husband, as an additional third-party custodian, who agreed to do the same. Minutes, ECF No. 16, Third Party Custody, ECF No. 17. The court ordered Vickers to remain in Grant's or Bibb's presence twenty-four hours a day. Am. Special Conditions, ECF No. 22. A few weeks later, the twenty-four-hour-supervision requirement was lifted by stipulation. ECF No. 25.

The next summer, in June 2014, Vickers waived his right to appear at pretrial hearings. ECF No. 35. He agreed "to be present in court ready for trial any day and hour the Court may fix in his absence." *Id.* A trial was set for Monday, March 2, 2015, at 9:00 a.m. ECF No. 36. The parties and court confirmed that date in late January 2015. ECF Nos. 38, 39.[1] On

---

[1] The government represents, without citation, that on the Friday before trial, the pretrial services officer directed Vickers to appear, and he said he would.

the morning of trial, Vickers did not appear; his monitoring equipment showed he was at home. Minutes, ECF No. 51. Vickers did not answer the phone, and the Sacramento Police Department went to check on him. Police Rep., ECF No. 57-1. The police found him conscious, barricaded in the garage in a car, the engine running, the garage door opener disabled, and a sheet across the bottom of the garage door frame. *Id.* Inside the house was a folder marked "Will," a letter to Grant, a box addressed to a friend, two iPods, a hard drive, iPad with its password noted nearby, BlackBerry phone, and extra food for his pets. *Id.* He refused to answer questions and was taken to a hospital. *Id.* After his release from the hospital, he was arrested and detained. Arrest Warrant, ECF No. 60; Detention Order, ECF No. 61.

According to the police report, Grant told the police she did not know Vickers' trial had been set to begin that morning; she had not taken primary responsibility over him. Police Rep., ECF No. 57-1. She explained Bibb had taken on that duty, but he was in New York with his sick mother. *Id.*

The police discovered Vickers' iPad had been connected to the internet through several secured wireless networks between September 2014 and that morning, which meant he likely had intentionally connected them to the internet. Police Rep., ECF No. 57-2. The iPad had also been used to send and receive emails between November 2014 and the Friday before. *Id.* But the iPods and iPads contained no evidence of child pornography. *See id.*

In April 2015, Vickers entered into a plea agreement and pleaded guilty to violation of 18 U.S.C. § 2252(a)(2), receipt of child pornography. Minutes, ECF No. 67; Plea Agreement, ECF No. 69. He agreed to forfeit his desktop computer, two hard drives, laptop, and a DVD, all of which he had used to commit the charged offense. Plea Agreement 4–5, ECF No. 69. He agreed not to oppose a motion from the United States to forfeit the $50,000 bond and agreed not to oppose forfeiture of the entire amount. *Id.* at 5. The government agreed not to pursue enforcement against Sandra Grant. *Id.*

The government moved for a judgment of forfeiture on May 18, 2015, ECF No. 70, which the court granted, ECF No. 73. The government then filed the current motion, requesting payment of the entire $50,000, on August 17, 2015. The court heard the government's

3

argument on this motion at sentencing on August 19, 2015, and in response to the court's questions, the government gave notice of supplemental decisional authority. ECF No. 86. Vickers filed no opposition and offered no argument in opposition at hearing.

II.     LEGAL STANDARD

"The law on bail forfeiture is neither complex nor voluminous." *United States v. Nguyen*, 279 F.3d 1112, 1115 (9th Cir. 2002). According to the Federal Rules of Criminal Procedure, "The court must declare a bail forfeited if a condition of the bond is breached." Fed. R. Crim. P. 46(f)(1). At the same time, a district court has discretion to "set aside in whole or in part a bail forfeiture upon any condition the court may impose if: (A) the surety later surrenders into custody the person released on the surety's appearance bond; or (B) it appears that justice does not require bail forfeiture." *Id.* R. 41(f)(2). The court may then remit the bond in whole or part. *See* Fed. R. Crim. P 41(f)(3), (4).

The decision to set aside forfeiture is one of "wide discretion." *Nguyen*, 279 F.3d at 1115. In several opinions over the years, the Ninth Circuit has described a list of factors to guide the court's discretion:

> 1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend, and 6) the appropriateness of the amount of the bond.

*United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 603 (9th Cir. 1995); *see also, e.g., Nguyen*, 279 F.3d at 1115–16; *United States v. Sar-Avi*, 255 F.3d 1163, 1167 (9th Cir. 2001); *United States v. Frias-Ramirez*, 670 F.2d 849, 852 (9th Cir. 1982). "These are merely non-exclusive factors for consideration, and '[n]ot all of the factors need to be resolved in the government's favor'" for the bond to be forfeited. *Sar-Avi*, 255 F.3d at 1167 (quoting *United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 603 (9th Cir. 1995)).

III.    DISCUSSION

The court has considered each of the six factors and the facts of this case. As to the first factor, Vickers' circumstances at the time of his apprehension suggest he intended not to

appear for trial on May 2, 2015. His attorney appeared, ready for trial, and did not know why he was absent. By all appearances, Vickers intended to end his life on that day. The sixth factor also favors the government. The amount of the bond need not approximate the government's costs; rather, it is regarded "as a form of liquidated damages." *Amwest*, 54 F.3d at 604. The bond should be appropriate in light of the offense charged. *Frias-Ramirez*, 670 F.2d at 853. Here, where Vickers faced a mandatory minimum custodial sentence of five years and a maximum of twenty, and given the nature of his offense, the $50,000 bond was not exorbitant.

As for the second and fifth factors, because the government does not seek to forfeit any of the $50,000 from Grant, her failing to secure his attendance at trial and her non-professional status do not weigh in favor of the government's position at all.

The remaining factors, the third and fourth, strongly favor remittance. As for the third, when an initially absent defendant is apprehended with little difficulty or delay, courts are loath to impose payment of the entire bond. *See, e.g.*, *Appearance Bond Surety v. United States*, 622 F.2d 334, 336–37 (8th Cir. 1980); *United States v. Parr*, 594 F.2d 440, 444 (5th Cir. 1979); *United States v. Kirkman*, 426 F.2d 747, 751–52 (4th Cir. 1970); *United States v. Gladding*, No. 09-00265, 2010 WL 3075653, at *4 (E.D. Cal. Aug. 5, 2010) (citing *Nguyen*, 279 F.3d at 1117)), *report and recommendation adopted*, 2010 WL 3618631 (E.D. Cal. Sept. 13, 2010); *see also Frias-Ramirez*, 670 F.2d at 853 n.4 (distinguishing cases in which "the defendants . . . were found or reapprehended shortly after breaching the conditions of their release"). But the Ninth Circuit has declined to require any careful weighing of the relationship between the amount of the bond and the government's costs or inconvenience, instead recognizing "where there has been cost and inconvenience to the government . . . the amount need not be specified." *Amway*, 54 F.3d at 604.

Here, the government incurred little cost in finding Vickers and eventually securing his remand to custody. He wore an electronic monitoring device he had not removed, so he was located early; the police found him still alive and extracted him from the barricaded garage with relatively little difficulty or danger. Though the police drew their weapons as they entered Vickers' garage, anticipating potential danger, there was none. The government secured his guilty plea and sentence without the time, expense, and uncertainty of a full trial. The

government had incurred costs of trial preparation, but these were costs it had or would have paid if Vickers had appeared the morning of May 2, ready for trial.

The fourth factor, other mitigating circumstances, favors remittance. On the one hand, a defendant's suicide attempt may suggest he is unwilling to face the consequences of his actions. *United States v. Wasendorf*, No. 12-2021, 2012 WL 4793366, at *3 (N.D. Iowa Oct. 9, 2012). But on the other, "[t]he purpose of the bail bond is not punitive." *Gladding*, 2010 WL 3075653, at *7; *United States v. Ailemen*, No. 94-0003, 1995 WL 444411, at *20 (N.D. Cal. June 1, 1995); *Parr*, 594 F.2d at 444; *United States v. Bass*, 573 F.2d 258, 260 (5th Cir. 1978). Rather, a bond is to "insure that the accused will reappear at a given time," *United States v. Vaccaro*, 51 F.3d 189, 192 (9th Cir. 1995) (quoting *United States v. Toro*, 981 F.2d 1045, 1049 (9th Cir. 1992)), and the court should not allow frustration or vindictiveness to taint its decision, *Parr*, 594 F.2d at 444. The Ninth Circuit has even suggested the defendant's ultimate appearance is a ground for remittance, even if he was absent in prior proceedings. *Amwest*, 54 F.3d at 604 (citing *Bass*, 573 F.2d at 560). A remittance in a case like this will not negatively affect the public interest. *See United States v. Cervantes*, 672 F.2d 460, 463 (5th Cir. 1982) ("Surely not many defendants will attempt to avoid custody or secure remissions by committing suicide.").

The court has looked for case law for guidance, but with little success. The scant authority focuses on the expense, delay, and prejudice to the government and court and the purposes of bonds in general. In *United States v. Parr*, the Fifth Circuit found the district court had abused its discretion by remitting only $35,000 of a $75,000 bond after the defendant's suicide, where his body was discovered less than a day later at his ranch. 594 F.2d at 441. After summarizing the purposes of a bond, the court emphasized how little the defendant's non-appearance had actually prejudiced or inconvenienced the government, and remitted all but $10,000. *Id.* at 444. *Parr* is cited with relative frequency for its discussion of prejudice and costs. *See, e.g.*, *Gladding*, 2010 WL 3075653, at *4–5; *United States v. Stathakis*, No. 04-790, 2007 WL 3124703, at *4 (E.D.N.Y. Oct. 24, 2007).

In *United States v. Odumabo*, the defendant committed suicide after his brother had agreed to serve as surety on a $20,000 bond. No. 04-87, 2008 WL 2003229, at *2 (N.D. Ind.

6

May 7, 2008). The court denied his brother's request to remit the bond and explained, "Although the government did not incur the costs of trying [the defendant] in absentia, as argued by [his brother, the surety], the government did expend substantial time, effort, and expense in locating and ultimately arresting [the defendant] after a 14 month search for him." *Id.*[2]

Here, the government found Vickers at his home in Sacramento promptly after his nonappearance, and secured his guilty plea soon afterwards.

IV. CONCLUSION

The government argues "it is hard to envision a more complete, emphatic, irreversible, and blatant violation of the terms of the appearance bond" than Vickers' attempted suicide. Gov't Br. at 11. Such dramatic and ruthless language distorts the reality of this case, in which Vickers' suicide attempt did not succeed and he appeared before the court shortly thereafter. This case thus is in sharp contrast to that in which the defendant flees and lives out the remainder of his days presumably unrepentant and unpunished. *Cf., e.g., Frias-Ramirez*, 670 F.2d at 853 (no remittance where defendant "disappeared"). Justice weighs heavily in favor of remittance.

The government's motion is DENIED. The $50,000 appearance bond is remitted in its entirety.

IT IS SO ORDERED.

DATED: November 12, 2015.

_____
UNITED STATES DISTRICT JUDGE

---

[2] In a third case, *United States v. Kehrt*, the district court for the Territory of Alaska found that forfeiture under Rule 46(f)(1) was mandatory, but found the bondsman could apply to the court to set aside the forfeiture if justice so required, therefore stopping short of addressing the question presented here. 128 F. Supp. 38, 39–40 (D. Alaska 1955).

7